# In the United States Court of Federal Claims
### No. 17-798C
### Filed: December 13, 2017

* * * * * * * * * * * * * * * * *

| | |
|---|---|
| FRANCISCO GONZALEZ, as court-appointed co-conservator of LUZ MARIA GONZALEZ, | *<br>*<br>*<br>* |
| Plaintiff, | *<br>*    Settlement Agreement; Breach of |
| v. | *     Contract; Contract Interpretation<br>* |
| UNITED STATES, | *<br>* |
| Defendant. | * |

* * * * * * * * * * * * * * * * *

    **Bruce G. Fagel**, Law Offices of Bruce G. Fagel & Associates, Beverly Hills, California, for the plaintiff.

    **Alison S. Vicks**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for the defendant. Of counsel was **Conor Kells**, Senior Trial Counsel, Torts Branch, Civil Division. With them were **Lisa L. Donahue**, Assistant Director, Commercial Litigation Branch, Civil Division, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, Civil Division, and **Chad A. Readler**, Acting Assistant Attorney General.

## O P I N I O N

**HORN, J.**

### FINDINGS OF FACT

    On June 14, 2017, Francisco Gonzalez, as the court-appointed co-conservator of Luz Maria Gonzalez, filed a complaint in this court to recover damages for breach of an express or implied contract arising out of a 2014 settlement agreement with the United States. In response, on October 10, 2017, defendant filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) (2017) of the Rules of the United States Court of Federal Claims (RCFC). Defendant asserts that under the terms of the settlement agreement, it was not responsible for fees incurred prior to the date the reversionary trust

was funded, and that plaintiff failed to allege the existence of an implied-in-fact agreement. Attached to its motion to dismiss, defendant filed a copy of the Settlement Agreement and Reversionary Trust in this case, which plaintiff, who had attached only a copy of a United States District Court for the Southern District of California Order, had not submitted to this court with his complaint. On November 2, 2017, this court issued an Order advising the parties of its intention to treat defendant's motion to dismiss as one for summary judgment under RCFC 56 (2017), since both parties had relied on various documents outside of the pleadings.[1] The court's November 2, 2017 Order instructed plaintiff in the response to defendant's motion to dismiss to indicate plaintiff's position on whether summary judgment is appropriate. The court also stated that plaintiff may provide the court with any additional documents that plaintiff believes would be relevant to the resolution of the case. On November 9, 2017, the court issued an Order stating that plaintiff, in the November 6, 2017 opposition to defendant's motion to dismiss, had not addressed the issue of whether summary judgment was appropriate and instructed plaintiff to file a stand-alone submission indicating if plaintiff considered summary judgment appropriate in the above-captioned case, and again offered plaintiff an opportunity to submit any additional relevant documents. On November 17, 2017, plaintiff's counsel filed a memorandum in this court stating that he did not believe summary judgment was appropriate, but, nonetheless, submitted three documents with his memorandum, which he indicated create an issue of material fact.

Plaintiff's complaint indicates that on February 4, 2011, Luz Marie Gonzalez suffered a permanent neurological brain injury while giving birth at Balboa Naval Hospital. Mrs. Gonzalez's injuries left "her in a comatose and vegetable state," requiring nursing care twenty-four hours per day on a permanent basis. Initially, plaintiff brought a claim,

---

[1] As an exhibit to his complaint, plaintiff attached a March 22, 2017 Order from the United States District Court for the Southern District of California in Gonzalez v. United States, No. 16-cv-1792-MMA (KSC) (S.D. Cal. July 11, 2016), which dismissed a petition plaintiff had filed in that court. In support of its motion before this court, defendant attached as exhibits: the parties' Stipulation for Compromise Settlement and Release, Irrevocable Reversionary Inter Vivos Grantor Medical Care Trust, and the Structured Settlement Proposal, as well as a declaration signed by Bronislav M. Dragonov, an attorney who was associated with plaintiff's attorney of record, Bruce G. Fagel, in Gonzalez v. United States, No. 13-cv-861-LAB (WVG) (S.D. Cal. Sept. 24, 2014), the Third Amended Petition for Approval of Settlement, the Order Adopting Report and Recommendation, the Joint Motion for Dismissal With Prejudice, and the Order of Dismissal in Gonzalez v. United States, No. 13-cv-861-LAB (WVG) (S.D. Cal. Feb. 20, 2015). Defendant also attached to its motion to dismiss the Petition for Order that Conservatee's Outstanding Medical Expenses Be Paid from Medical Care Trust Established For the Care of Conservatee, which was submitted to the Superior Court of the State of California in Conservatorship of Luz Maria Gonzalez, No. 37-2012-00151931-PR-CP-CTL (Super. Ct. Cal. June 10, 2016), and the Notice of Removal and the Order Granting Respondent's Motion to Dismiss in Gonzalez v. United States, No. 16-cv-1792-MMA (KSC) (S.D. Cal. July 11, 2016).

under the Federal Tort Claims Act (FTCA), in the United States District Court for the Southern District of California in April 2013. See Gonzalez v. United States, No. 13-861-LAB (WVG) (S.D. Cal. Apr. 10, 2013). Plaintiff alleges that on July 13, 2014, the parties came to an agreement to settle plaintiff's FTCA claim in the amount of $5,575,000.00. According to defendant, however, after participating in a mediation, the parties reached a tentative settlement agreement on July 30, 2014. Plaintiff alleges that the United States Attorney's office reduced the settlement terms to writing in a document entitled, "Stipulation for Compromise Settlement and Release" (the Settlement Agreement). The complaint alleges that as part of the Settlement Agreement, both parties agreed to the creation of an "Irrevocable Reversionary Inter Vivos Grantor Medical Care Trust for the Benefit of Luz Marie Gonzalez" (the Reversionary Trust). The Reversionary Trust was memorialized into writing and signed by both parties. The Settlement Agreement states that "[t]he parties agree to the terms, conditions, and requirements of the Reversionary Trust, a copy of which is attached hereto and incorporated by reference." The Reversionary Trust names Medivest Benefit Advisors Inc. (Medivest Benefit Advisors), as the Administrator of the Trust and Wells Fargo Bank, N.A., as Trustee. The Settlement Agreement states that the United States agreed to pay $1,994,567.00 in up-front cash, $900,000.00 to purchase annuity contracts, and $2,855,433.00 to the Reversionary Trust. The Settlement Agreement states that the settlement is subject to conditions, including the approval of the Attorney General or his designee. It is uncontested that the United States did not sign the Settlement Agreement and the Reversionary Trust until December 28, 2014, and the United States funded the Reversionary Trust on February 25, 2015.

On September 24, 2014, plaintiff filled a motion in the United States District Court for the Southern District of California requesting that the court approve the Settlement Agreement. See Gonzalez v. United States, No. 13-cv-861-LAB (WVG) (S.D. Cal. Apr. 10, 2013). In support of the motion to approve the Settlement Agreement in the District Court case, plaintiff submitted a declaration signed by plaintiff's counsel, Bruce G. Fagel, who also was plaintiff's counsel in the District Court case, which stated he "was able to negotiate an agreement with the U.S. Attorney that the government would pay for [Mrs. Gonzalez's] care at Care Meridian . . . from August 11, 2014 forward, with such sums to be paid after the government funded the settlement." (emphasis omitted). In his complaint in this case, plaintiff alleges that the government did not object to the above-quoted statement in the declaration, and that the speedy transfer of Mrs. Gonzalez to the CareMeridian, LLC (CareMeridian) facility was a "key component" of the settlement. On October 1, 2014, a District Court Magistrate Judge issued a report and recommendation regarding the third amended petition in the District Court case, which stated that the Magistrate Judge found the terms and conditions of the settlement to be "fair, reasonable, and in the best interest of Luz Gonzalez . . . ." Id. The report and recommendation also specifically stated that "Plaintiff is legally responsible for any and all past, present, and future liens or claims for payment or reimbursement, including any liens or claims by Medicaid, Medicare, or healthcare providers." Plaintiff also represented to the Magistrate Judge that he "had made a diligent search for any liens or any claims for payment or reimbursement . . . and that after such search neither Plaintiff nor her counsel are aware of any such liens or claims for reimbursement or payment." Id. The report and recommendation also acknowledged that the Magistrate Judge "was aware of the

3

necessity of the approval by the Attorney General of the United States," before the Settlement Agreement could be signed on behalf of the United States. On October 6, 2014, the District Court issued an order adopting the Magistrate Judge's report and recommendation and ordered that judgment be entered as set forth in the report and recommendation.

The Reversionary Trust agreement, signed by both parties on December 28, 2014, and incorporated into the Settlement Agreement by reference, states:

> Unless otherwise specifically authorized . . . the administrator shall not authorize (and the trustee shall not pay) [for] . . . goods and services that were provided prior to the date the Trust is deemed established; [or] goods and services for which an obligation to provide such goods and services was incurred prior to the date the Trust is deemed established.

(emphasis omitted). The Reversionary Trust states that the Reversionary Trust will not be deemed established until all of the following conditions have been met:

> (1) each party to the Trust has signed the Trust instrument; (2) the Grantor has deposited with the Trustee the initial sum stated or determined by the terms of the Stipulation; (3) the Trustee has deposited said sum into a separate account opened by the Trustee in the name of the Trust; and (4) the Beneficiary is alive at the time said sum is deposited into said separate account.

The Settlement Agreement further states that,

> Plaintiffs stipulate and agree that they are legally responsible for any and all past, present, and future liens and past, present, and future claims for payment or reimbursement . . . . The Plaintiffs stipulate and agree that they will satisfy or resolve any and all such past, present, and future liens or claims for payment or reimbursement asserted by any such individual or entity. The Plaintiffs and their attorney represent that, as of the date they sign this Stipulation, they have made a diligent search and effort to determine the identity of any individual or entity that has or may have a lien or a claim for payment or reimbursement arising from the injuries that are the subject matter of this action.

Additionally, the Reversionary Trust states that the "Trust is irrevocable and the terms shall not be amended, modified, altered, or changed in any respect."

Before filing a complaint in this court, but after the Settlement Agreement was signed by the parties, plaintiff filed a complaint in the Superior Court of the State of California, County of San Diego. The filing was titled Petition for Order that Conservatee's Outstanding Medical Expenses be Paid from Medical Care Trust Established for the Case of Conservatee. See Conservatorship of Luz Maria Gonzalez, No. 37-2012-00151931-

4

PR-CP-CTL (Super. Ct. Cal. June 10, 2016). The United States had the state court action removed to the United States District Court for the Southern District of California. See Gonzalez v. United States, No. 16-cv-1792-MMA (KSC) (S.D. Cal. July 11, 2016). Plaintiff alleged in the 2016 District Court action that the Reversionary Trust Administrator had improperly denied payment for the outstanding bills on the grounds "that the Trust language provides that dates of service prior to the establishment of the trust are not payable from trust funds." Id. Plaintiff alleged that the outstanding medical bills "should have been paid from the Medical Care Trust set up for Conservatee's benefit," but "delays in having the Trust actually funded by the U.S. Government, coupled with the language of the Trust concerning timing of payment for past services, has resulted in the Administrator of the Trust denying payment absent further court order." Id. Plaintiff also alleged that the federal government should not be allowed to "take advantage of a delay that they alone caused in the first place and more importantly cannot claim they were unaware of the Care Meridian lien." Id. (emphasis omitted). The United States District Court for the Southern District of California dismissed the 2016 action, finding that plaintiff's 2016 claim could only be construed as one for breach of an express or implied contract under the Tucker Act within the exclusive jurisdiction of the United States Court of Federal Claims. See id.

According to the subsequent complaint filed in this court, on August 8, 2014, Mrs. Gonzalez was transferred to CareMeridian, "on a lien basis, for optimum care, with the promise to pay for her care when the settlement agreed to by the government was funded." Plaintiff's complaint indicates that CareMeridian is "a better and specialized facility" which cares "for the severely brain injured on a one-to-one basis." Plaintiff alleges that on February 15, 2015, the Reversionary Trust Administrator, Medivest Benefit Advisors, began making payments to CareMeridian for Mrs. Gonzalez's care. Although the parties indicate that Medivest Benefit Advisors began making payments to CareMeridian on February 15, 2015, both parties also state that the Reversionary Trust was funded on February 25, 2015. The complaint alleges that the Trust Administrator did not make payments to cover the outstanding bills, incurred from August 8, 2014 through February 15, 2015, which amount to $210,225.00. Plaintiff further alleges that the United States and Medivest Benefit Advisors have refused to pay the outstanding bills. Plaintiff alleges that defendant's failure to pay for all the medical bills incurred by Mrs. Gonzalez at CareMeridian from August 8, 2014 until February 15, 2015 constitutes a breach of either an express or implied contract between the plaintiff and the United States.

## DISCUSSION

Although the defendant originally filed its response to the complaint as a motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(6), "[i]f, on a motion under RCFC 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56." RCFC 12(d) (2017). "Whether to accept extra-pleading matter on a motion for judgment on the pleadings and to treat the motion as one for summary judgment is within the trial court's discretion." Easter v. United States, 575 F.3d 1332, 1335 (Fed. Cir. 2009) (citing Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 38-39 (1st Cir. 2004); 5C Charles

Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1371, at 273 (3d ed. 2004)); Duffy v. United States, 120 Fed. Cl. 55, 61 (2015), aff'd, 636 F. App'x 792 (Fed. Cir. 2016). "Courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion' and rely upon that material." Love Terminal Partners v. United States, 97 Fed. Cl. 355, 378-79 (2011) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 2004)). "Such discretion generally is exercised when the proffered material is 'likely to facilitate the disposition of the action.'" Id. at 379 (internal quotation marks and citation omitted). Before the court may convert a motion for judgment on the pleadings into a motion for summary judgment, the court must ordinarily provide notice of its intention to do so. Easter v. United States, 575 F.3d at 1335; Huntington Promotional & Supply, LLC v. United States, 114 Fed. Cl. 760, 772 (2014) (citing RCFC 12(d)) ("The rules of this court require that the court provide the parties with notice of its intention to treat defendant's motion as a motion for summary judgment and an opportunity to proceed pursuant to the rules of summary judgment."). "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." RCFC 12(d). In this case, the court notified the parties as required and gave the parties an opportunity to submit additional exhibits and treats defendant's motion as one for summary judgment. Defendant was given until December 8, 2017, to file a further submission, but has not done so, as of the date of this opinion.

RCFC 56 is similar to Rule 56 of the Federal Rules of Civil Procedure in language and effect. Both rules provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); Fed. R. Civ. P. 56(a) (2017); see also Alabama v. North Carolina, 560 U.S. 330, 344 (2010); Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); 8x8, Inc. v. United States, 854 F.3d 1376, 1380 (Fed. Cir. 2017); Biery v. United States, 753 F.3d 1279, 1286 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Ladd v. United States, 713 F.3d 648, 651 (Fed. Cir. 2013); Minkin v. Gibbons, P.C., 680 F.3d 1341, 1349 (Fed. Cir. 2012); Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1309-10 (Fed. Cir. 2012); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d 1365, 1372 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2012); Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1325 (Fed. Cir.), reh'g denied (Fed. Cir. 2010); Consol. Coal Co. v. United States, 615 F.3d 1378, 1380 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 131 S. Ct. 2990 (2011); 1st Home Liquidating Trust v. United States, 581 F.3d 1350, 1355 (Fed. Cir. 2009); Arko Exec. Servs., Inc. v. United States, 553 F.3d 1375, 1378 (Fed. Cir. 2009); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283 (Fed. Cir. 2008), reh'g and reh'g en banc denied, 556 F.3d 1329 (Fed. Cir. 2009); Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2005); Am. Pelagic Fishing Co., L.P. v. United States, 379 F.3d 1363, 1370-71 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005); Mata v. United States, 114 Fed. Cl. 736, 744 (2014); Leggitte v. United States, 104 Fed. Cl. 315, 317 (2012); Arranaga v. United States, 103 Fed. Cl. 465, 467-68 (2012); Cohen v. United States, 100 Fed. Cl. 461, 469 (2011); Boensel v. United States, 99 Fed. Cl. 607, 610 (2011).

A fact is material if it will make a difference in the result of a case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Intercontinental Great Brands LLC v. Kellogg N. Am. Co., 869 F.3d 1336, 1343 (Fed. Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248); Marriott Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968 (Fed. Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248); Mata v. United States, 114 Fed. Cl. at 744; Arranaga v. United States, 103 Fed. Cl. at 467-68; Thompson v. United States, 101 Fed. Cl. 416, 426 (2011); Cohen v. United States, 100 Fed. Cl. at 469. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001); Gorski v. United States, 104 Fed. Cl. 605, 609 (2012); Walker v. United States, 79 Fed. Cl. 685, 692 (2008); Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied, 361 U.S. 843 (1959), reh'g denied, 361 U.S. 941 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; see, e.g., Schlup v. Delo, 513 U.S. 298, 332 (1995); U.S. Water Servs. v. Novozymes A/S, 843 F.3d 1345, 1351 (Fed. Cir. 2016) ("District Court improperly made credibility determinations and weighed conflicting evidence."); Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed. Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment."); DNC Parks & Resorts at Yosemite Inc. v. United States, 133 Fed. Cl. 314, 319 (2017); TigerSwan, Inc. v. United States, 118 Fed. Cl. 447, 451 (2014); Dana R. Hodges Trust v. United States, 111 Fed. Cl. 452, 455 (2013); Cohen v. United States, 100 Fed. Cl. at 469-70; Boensel v. United States, 99 Fed. Cl. at 611; Macy Elevator, Inc. v. United States, 97 Fed. Cl. 708, 717 (2011); Dick Pacific/GHEMM, JV ex rel. W.A. Botting Co. v. United States, 87 Fed. Cl. 113, 126 (2009); Johnson v. United States, 49 Fed. Cl. 648, 651 (2001), aff'd, 52 F. App'x 507 (Fed. Cir. 2002), published at 317 F.3d 1331 (Fed. Cir. 2003). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-52; Jay v. Sec'y of Dep't of Health and Human Servs., 998 F.2d 979, 982 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1993); Leggitte v. United States, 104 Fed. Cl. at 316. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d at 1372; Marriott Int'l Resorts, L.P. v. United States, 586 F.3d at 968; Am. Seating Co. v. USSC Grp., Inc., 514 F.3d 1262, 1266 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2008); Rothe Dev. Corp. v. U.S. Dep't of Def., 262 F.3d 1306, 1316 (Fed. Cir. 2001); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553 n.3 (Fed. Cir. 1996). In such cases, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

> In appropriate cases, summary judgment: saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

Dehne v. United States, 23 Cl. Ct. 606, 614-15 (1991) (quoting Pure Gold, Inc. v. Syntex, (U.S.A.) Inc., 739 F.2d 624, 626 (Fed. Cir. 1984)), vacated on other grounds, 970 F.2d 890 (Fed. Cir. 1992) (citation omitted); see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 806 (Fed. Cir. 1999) ("The purpose of summary judgment is not to deprive a litigant of a trial, but to avoid an unnecessary trial when only one outcome can ensue."); Demodulation, Inc. v. United States, 126 Fed. Cl. 499, 503 (2016); Metric Constr. Co., Inc. v. United States, 73 Fed. Cl. 611, 612 (2006).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1244 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 555 U.S. 812 (2008); Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1109 (2002); Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999); TigerSwan, Inc. v. United States, 118 Fed. Cl. at 451; Stephan v. United States, 117 Fed. Cl. 68, 70 (2014); Gonzales-McCaulley Inv. Group, Inc. v. United States, 101 Fed. Cl. 623, 629 (2011). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. See Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Yant v. United States, 588 F.3d 1369, 1371 (Fed. Cir. 2009), cert. denied, 131 S. Ct. 69 (2010); Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co., 272 F.3d 1365, 1369 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 293 F.3d 1364 (Fed. Cir. 2002), cert. denied, 539 U.S. 957 (2003); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Wanlass v. Fedders Corp., 145 F.3d 1461, 1463 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1998); see also Am. Pelagic Co. v. United States, 379 F.3d at 1371 (citing Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1345-46 (Fed. Cir. 2000)); DNC Parks & Resorts at Yosemite Inc. v. United States, 133 Fed. Cl. at 318-19; Dana R. Hodges Trust v. United States, 111 Fed. Cl. at 455; Boensel v. United States, 99 Fed. Cl. at 611 ("'The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 255) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Casitas Mun. Water Dist. v. United States, 543 F.3d at 1283; Lathan Co. Inc. v. United States, 20 Cl. Ct. 122, 125 (1990))); see also Am. Seating Co. v. USSC Grp., Inc., 514 F.3d at 1266-67; Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807. "However, once a moving party satisfies its initial burden, mere allegations of a genuine issue of material fact without

8

supporting evidence will not prevent entry of summary judgment." Republic Sav. Bank, F.S.B. v. United States, 584 F.3d 1369, 1374 (Fed. Cir. 2009); see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48; Microsoft Corp. v. GeoTag, Inc., 817 F.3d 1305, 1315 (Fed. Cir. 2016) (stating "the absence of evidence supporting a particular fact does not equate to affirmative evidence of a genuine dispute as to a material fact, such that a grant of summary judgment is improper").

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Riley & Ephriam Constr. Co. v. United States, 408 F.3d 1369, 1371 (Fed. Cir. 2005); Crown Operations Int'l Ltd. v. Solutia Inc., 289 F.3d 1367, 1377 (Fed. Cir.), reh'g denied (Fed. Cir. 2002); Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc., 109 F.3d 739, 741 (Fed. Cir.) (quoting Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994), reh'g denied and en banc suggestion declined (Fed. Cir. 1995)), reh'g denied and en banc suggestion declined (Fed. Cir. 1997); Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1569 (Fed. Cir. 1997); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; RQ Squared, LLC v. United States, 119 Fed. Cl. 751, 757-58 (2015). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. at 322; see also Akzo Nobel Coatings, Inc. v. Dow Chem. Co., 811 F.3d 1334, 1341 (Fed. Cir. 2016); Wavetronix LLC v. EIS Elec. Integrated Sys., 573 F.3d 1343, 1354 (Fed. Cir. 2009); Long Island Sav. Bank, FSB v. United States, 503 F.3d at 1244; Florida Power & Light Co. v. United States, 375 F.3d 1119, 1124 (Fed. Cir. 2004); Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202, 1207 (Fed. Cir. 2001); Am. Airlines, Inc. v. United States, 204 F.3d 1103, 1108 (Fed. Cir. 2000); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; Rasmuson v. United States, 109 Fed. Cl. 267, 271 (2013). However, "a non-movant is required to provide opposing evidence under Rule 56(e) only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law." Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1369 (Fed. Cir. 2006).

"Questions of law are particularly appropriate for summary judgment." Oenga v. United States, 91 Fed. Cl. 629, 634 (2010) (citing Dana Corp. v. United States, 174 F.3d 1344, 1347 (Fed. Cir. 1999) ("Summary judgment was appropriate here [in Dana Corp.] because no material facts were disputed, many being stipulated, and the only disputed issues were issues of law. Moreover, on each issue one party or the other is entitled to judgment as a matter of law.")); see also Santa Fe Pac. R.R. v. United States, 294 F.3d 1336, 1340 (Fed. Cir. 2002) ("Issues of statutory interpretation and other matters of law may be decided on motion for summary judgment.").

This court has jurisdiction to review settlement agreements, which are in the nature of a contract between a private citizen or business entity and the government because a settlement agreement is a contract. See Ramona Two Shields v. United States, 820 F.3d

1324, 1329 (Fed. Cir. 2016) ("We treat the Cobell settlement as a contract . . . the proper interpretation of which is a question of law . . . ."); Cunningham v. United States, 748 F.3d 1172, 1176 (Fed. Cir. 2014) ("We have long held that disputes over settlement agreements are governed by contract principles."); Slattery v. Dep't of Justice, 590 F.3d 1345, 1349 (Fed. Cir. 2010) ("Settlement agreement disputes are governed by contract principles."); Musick v. Dep't of Energy, 339 F.3d 1365, 1369 (Fed. Cir. 2003) ("A settlement agreement is a contract, the interpretation of which is a question of law."); Kasarsky v. Merit Sys. Prot. Bd., 296 F.3d 1331, 1336 (Fed. Cir. 2002) ("Disputes involving settlement agreements are governed by contract principles."); Greco v. Dep't of the Army, 852 F.2d 558, 560 (Fed. Cir. 1988) ("It is axiomatic that a settlement agreement is a contract."). Therefore, an alleged breach of a settlement agreement involving damages of more than $10,000.00 is within the Tucker Act jurisdiction of the United States Court of Federal Claims. See Nutt v. United States, 121 Fed. Cl. 579, 584 (2015) (quoting VanDesande v. United States, 673 F.3d 1342, 1346 (Fed. Cir. 2012)), aff'd, 837 F.3d 1292 (Fed. Cir. 2016); see also Caraballo v. United States, 124 Fed. Cl. 741, 748 (2016), aff'd, 691 F. App'x 613 (Fed. Cir. 2017).

"Contract interpretation starts with the language of the contract." SUFI Network Servs., Inc. v. United States, 785 F.3d 585, 593 (Fed. Cir. 2015); see also Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 824 (Fed. Cir. 2010), cert. denied, 562 U.S. 1178 (2011); Bell/Heery v. United States, 739 F.3d 1324, 1331 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); LAI Servs., Inc. v. Gates, 573 F.3d 1306, 1314 (Fed. Cir.), reh'g denied (Fed. Cir. 2009); Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375 (Fed. Cir. 2004); Foley Co. v. United States, 11 F.3d 1032, 1034 (Fed. Cir. 1993); Nw. Title Agency, Inc. v. United States, 126 Fed. Cl. 55, 57-58 (2016) (citing Foley Co. v. United States, 11 F.3d 1032, 1034 (Fed. Cir. 1993)) ("The starting point for any contract interpretation is the plain language of the agreement."); Beard v. United States, 125 Fed. Cl. 148, 158 (2016); Eden Isle Marina, Inc. v. United States, 113 Fed. Cl. 372, 483–84 (2013).

"'"In contract interpretation, the plain and unambiguous meaning of a written agreement controls."'" Arko Exec. Servs., Inc. v. United States, 553 F.3d 1375, 1379 (Fed. Cir. 2009) (quoting Hercules Inc. v. United States, 292 F.3d 1378, 1380-81 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002) (quoting Craft Mach. Works, Inc. v. United States, 926 F.2d 1110, 1113 (Fed. Cir. 1991))). "Terms must be given their plain meaning if the language of the contract is clear and unambiguous." SUFI Network Servs., Inc. v. United States, 785 F.3d at 593 (citing Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003)); see also Nutt v. United States, 837 F.3d 1292, 1296 (Fed. Cir. 2016); Beard v. United States, 125 Fed. Cl. at 158 ("If the contract language is unambiguous, then it must be given its plain and ordinary meaning . . . ."). The United States Court of Appeals for the Federal Circuit stated in Massie v. United States:

> In interpreting a contract, "[w]e begin with the plain language." "We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." In addition, "[w]e must

> interpret the contract in a manner that gives meaning to all of its provisions and makes sense.'"

Massie v. United States, 166 F.3d 1184, 1189 (Fed. Cir. 1999) (quoting McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435, reh'g denied and en banc suggestion declined (Fed. Cir. 1996); (internal citations omitted)); Jowett, Inc. v. United States, 234 F.3d 1365, 1368 (Fed. Cir. 2000) (quoting McAbee Constr., Inc. v. United States, 97 F.3d at 1435 and Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998)); Harris v. Dep't of Veterans Affairs, 142 F.3d at 1467; see also Coast Prof'l, Inc. v. United States, 828 F.3d 1349, 1354 (Fed. Cir. 2016); Shell Oil Co. v. United States, 751 F.3d 1282, 1305 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2014) (noting that a contract must be interpreted in context, giving meaning to the document as a whole) (citing NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004); Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin., 169 F.3d 747, 752 (Fed. Cir. 1999)); McHugh v. DLT Solutions, Inc., 618 F.3d 1375, 1380 (Fed. Cir. 2010); Giove v. Dep't of Transp., 230 F.3d 1333, 1340–41 (Fed. Cir. 2000) ("In addition, we must interpret the contract in a manner that gives meaning to all of its provisions and makes sense. Further, business contracts must be construed with business sense, as they naturally would be understood by intelligent men of affairs.") (citations omitted); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991) (indicating that a preferable interpretation of a contract is one that gives meaning to all parts of the contract rather than one that leaves a portion of the contract "useless, inexplicable, void, or superfluous"). A Judge of the United States Court of Federal Claims has explained:

> "The words of a contract are deemed to have their ordinary meaning appropriate to the subject matter, unless a special or unusual meaning of a particular term or usage was intended, and was so understood by the parties." Lockheed Martin IR Imaging Sys., Inc. v. West, 108 F.3d 319, 322 (Fed. Cir. 1997). "Under general rules of contract law we are to interpret provisions of a contract so as to make them consistent." Abraham v. Rockwell Int'l Corp., 326 F.3d 1242, 1251 (Fed. Cir. 2003). "[A]n agreement is not to be read in a way that places its provisions in conflict, when it is reasonable to read the provisions in harmony. . . . [T]he provisions must be read together in order to implement the substance and purpose of the entire agreement." Air–Sea Forwarders, Inc. v. United States, 166 F.3d 1170, 1172 (Fed. Cir. 1999). "A reasonable interpretation must assure that no contract provision is made inconsistent, superfluous, or redundant." Medlin Const. Grp., Ltd. v. Harvey, 449 F.3d 1195, 1200 (Fed. Cir. 2006) (internal quotation marks omitted).

Dynetics, Inc. v. United States, 121 Fed. Cl. 492, 512 (2015); see also RDA Constr. Corp. v. United States, 132 Fed. Cl. 732, 770 (2017); Marquardt Co. v. United States, 101 Fed. Cl. 265, 269 (2011) ("In interpreting contractual language, the court must give reasonable meaning to all parts of the contract and avoid rendering portions of the contract meaningless." (citation omitted)).

The United States Court of Appeals for the Federal Circuit also has indicated that "'[t]he contract must be construed to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract.'" Arko Exec. Servs., Inc. v. United States, 553 F.3d at 1379 (quoting Hercules Inc. v. United States, 292 F.3d at 1380-81); see also LAI Servs., Inc. v. Gates, 573 F.3d at 1314; Gardiner, Kamya & Assocs., P.C. v. Jackson, 467 F.3d 1348, 1353 (Fed. Cir. 2006) (citations omitted); Medlin Constr. Grp., Ltd. v. Harvey, 449 F.3d 1195, 1200 (Fed. Cir. 2006) (reviewing the contract as a whole to determine the meaning of relevant provisions); Hunt Constr. Grp., Inc. v. United States, 281 F.3d 1369, 1372 (Fed. Cir. 2002) ("We begin with the plain language when interpreting a contract . . . . The contract must be considered as a whole and interpreted to effectuate its spirit and purpose, giving reasonable meaning to all parts." (citations omitted)); Beard v. United States, 125 Fed. Cl. at 158 (quoting Pac. Gas & Elec. Co. v. United States, 536 F.3d 1282, 1288 (Fed. Cir. 2008)) ("In construing the meaning of a contractual provision, the court does not interpret the disputed term or phrase in isolation, but "construes contract terms in the context of the entire contract, avoiding any meaning that renders some part of the contract inoperative.").

It has been "'a fundamental precept of common law that the intention of the parties to a contract controls its interpretation.'" Tri-Star Elecs. Int'l, Inc. v. Preci-Dip Durtal SA, 619 F.3d 1364, 1367 (Fed. Cir. 2010) (quoting Beta Sys., Inc. v. United States, 838 F.2d 1179, 1185 (Fed. Cir. 1988) (quoting Firestone Tire & Rubber Co. v. United States, 195 Ct. Cl. 21, 30, 444 F.2d 547, 551 (1971))); Alvin, Ltd. v. United States Postal Serv., 816 F.2d 1562, 1565 (Fed. Cir. 1987) ("In the case of contracts, the avowed purpose and primary function of the court is the ascertainment of the intent of the parties."); see also Flexfab, LLC v. United States, 424 F.3d 1254, 1262 (Fed. Cir. 2005) ("[I]ntent is determined by looking to the contract and, if necessary, other objective evidence. In the absence of clear guidance from the contract language, the requisite intent on the part of the government can be inferred from the actions of the contracting officer . . . ."); see also Canpro Invs. Ltd. v. United States, 130 Fed. Cl. 320, 347 (2017) ("Contract interpretation requires determining the intention of the parties.").

The government, however, "'is not bound by its agents acting beyond their authority and contrary to regulation.'" Urban Data Sys., Inc. v. United States, 699 F.2d 1147, 1153 (Fed. Cir. 1983) (quoting Yosemite Park and Curry Co. v. United States, 217 Ct. Cl. 360, 370, 582 F.2d 552, 558 (1978) (citing Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947))) (other citations omitted); see also Liberty Ammunition, Inc. v. United States, 835 F.3d 1388, 1401 (Fed. Cir. 2016), cert. denied, 137 S. Ct. 1825 (2017); Chattler v. United States, 632 F.3d 1324, 1330 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2011); Toon v. United States, 96 Fed. Cl. 288, 299-300 (2010); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. at 714. "[S]ince one of the parties to the contract is the federal government, plaintiffs must show that the 'officer whose conduct is relied upon had actual authority to bind the government in contract.'" Edwards v. United States, 22 Cl. Ct. 411, 420 (1991) (quoting H.F. Allen Orchards v. United States, 749 F.2d 1571, 1575 (Fed. Cir. 1984), cert. denied, 474 U.S. 818, 106 S. Ct. 64, 88 L. Ed. 2d 52 (1985)). "'[A]nyone entering into an agreement with the Government takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government,

and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority.'" Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1432 (Fed. Cir. 1998) (quoting Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997)).

"A party alleging either an express or implied-in-fact contract with the government 'must show a mutual intent to contract including an offer, an acceptance, and consideration.'" Bank of Guam v. United States, 578 F.3d at 1326 (quoting Trauma Serv. Grp. v. United States, 104 F.3d at 1325); see also Chattler v. United States, 632 F.3d at 1330 (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1325); Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003) (citing City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998)). "The elements of an express oral contract are the same as those of a written contract: mutuality of intent to be bound, definite offer, unconditional acceptance, and consideration." Edwards v. United States, 22 Cl. Ct. at 420 (citing Essen Mall Properties v. United States, 21 Cl. Ct. 430, 440 (1990); Pac. Gas & Elec. Co. v. United States, 3 Cl. Ct. 329, 339 (1983), aff'd, 738 F.2d 452 (Fed. Cir. 1984) and; City of Klawock v. United States, 2 Cl. Ct. 580, 584 (1983), aff'd, 732 F.2d 168 (Fed. Cir. 1984)); see also Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir.) ("The requirements for a valid contract with the United States are: a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract.") (citations omitted), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 522 U.S. 857 (1997); San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989); Stanwyck v. United States, 127 Fed. Cl. 308, 312 (2016); Huntington Promotional & Supply, LLC v. United States, 114 Fed. Cl. at 767; Eden Isle Marina, Inc. v. United States, 113 Fed. Cl. 372, 492 (2013); Council for Tribal Emp't Rights v. United States, 112 Fed. Cl. 231, 243 (2013). The elements of a binding contract with the United States are identical for express and implied-in-fact contracts. See Night Vision Corp. v. United States, 469 F.3d 1369, 1375 (Fed. Cir. 2006) ("The elements of an implied-in-fact contract are the same as those of an oral express contract."), cert. denied, 550 U.S. 934 (2007); Hanlin v. United States, 316 F.3d at 1328 ("Thus, the requirements for an implied-in-fact contract are the same as for an express contract; only the nature of the evidence differs."); City of Cincinnati v. United States, 153 F.3d at 1377 ("Like an express contract, an implied-in-fact contract requires '(1) mutuality of intent to contract; (2) consideration; and, (3) lack of ambiguity in offer and acceptance.' . . . When the United States is a party, a fourth requirement is added: The government representative whose conduct is relied upon must have actual authority to bind the government in contract." (quoting City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990)); Trauma Serv. Grp. v. United States, 104 F.3d at 1325; Russell Corp. v. United States, 210 Ct. Cl. at 608-09; Weeks v. United States, 124 Fed. Cl. 630, 633 (2016); Huntington Promotional & Supply, LLC v. United States, 114 Fed. Cl. at 767; Vargas v. United States, 114 Fed. Cl. at 233; Prairie County, Montana v. United States, 113 Fed. Cl. 194, 202 (2013); Mastrolia v. United States, 91 Fed. Cl. 369, 384 (2010) (citing Flexfab, L.L.C. v. United States, 424 F.3d at 1265). "'A well pleaded allegation of an express, or implied-in-fact, contract necessarily includes allegations going to each of the requisite elements of a contract.'" De Archibold v. United States, 57 Fed. Cl. 29, 32

13

(2003) (quoting McAfee v. United States, 46 Fed. Cl. 428, 432, appeal dismissed, 243 F.3d 565 (Fed. Cir. 2000)).

An implied-in-fact contract is an agreement "'"founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."'" Trauma Serv. Grp. v. United States, 104 F.3d at 1325 (quoting Hercules, Inc. v. United States, 516 U.S. 417, 424 (1996) (quoting Balt. & Ohio R.R. Co. v. United States, 261 U.S. 592, 597 (1923))); see also Kam-Almaz v. United States, 682 F.3d at 1368; Bank of Guam v. United States, 578 F.3d 1318, 1329 (Fed. Cir. 2009) (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1326); Bay View, Inc. v. United States, 278 F.3d 1259, 1265-66 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 285 F.3d 1035 (Fed. Cir.), cert. denied, 537 U.S. 826 (2002); XP Vehicles, Inc. v. United States, 121 Fed. Cl. 770, 781 (2015); Westlands Water Dist. v. United States, 109 Fed. Cl. 177, 203 (2013); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. at 728 (citing Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 597; Russell Corp. v. United States, 210 Ct. Cl. at 609). Such an agreement will not be implied "unless the meeting of minds was indicated by some intelligible conduct, act or sign." Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 598; see also Russell Corp. v. United States, 210 Ct. Cl. at 609. "[T]he existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract." Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (citing Atlas Corp. v. United States, 895 F.2d 745, 755 (Fed. Cir. 1990)); see also Bank of Guam v. United States, 578 F.3d at 1329; Gov't Servs. Corp. v. United States, 131 Fed. Cl. 409, 428 (2017); E & E Enters. Glob., Inc. v. United States, 120 Fed. Cl. 165, 179 n.12 (2015). In some circumstances, "'a separate, prior oral agreement may be valid if it serves as consideration or inducement for a subsequent written contract and does not vary the terms of the written contract.'" Hazeltine Corp. v. United States, 10 Cl. Ct. 417, 441-42 (1986) (quoting Prestex, Inc. v. United States, 3 Cl. Ct. 373, 378 (1983)). "Even there, however, the prior oral agreement is invalid and unenforceable if it conflicts with or varies the terms of the written contract." Id. at 442; see also Brawley v. United States, 96 U.S. 168, 173 (1877) (holding a written contract "is presumed, in law, to express the final understanding of the parties" and if "the contract did not express the true agreement, it was the claimant's folly to have signed it").

In the action currently before the court, plaintiff alleges that defendant breached "an express or implied contract to pay reasonable medical expenses . . . ." Defendant alleges that because the written Settlement Agreement and the terms incorporated into that agreement expressly "set[] out when the trust would be deemed established, and it clearly states that the trust will not pay for benefits received or costs incurred before the trust was deemed established," plaintiff's claim must fail.[2] According to defendant, "this

---

[2] Defendant also alleges that plaintiff's claim is barred because the issue of whether the Reversionary Trust would cover costs incurred before the Reversionary Trust was deemed established already was decided in the previous FTCA action, and plaintiff "did not object to the court's understanding and order that he was responsible for paying all

14

Court cannot modify, alter, amend, or change the terms of the trust." Defendant also asserts that plaintiff has failed to allege that a representative with the authority to enter into a settlement agreement "ever made an unambiguous and unconditional offer to pay for medical expenses incurred before the trust was deemed established . . . ." Additionally, defendant argues that the existence of the express contract "precludes the existence of an implied-in-fact contract dealing with the same subject matter . . . ." Plaintiff chose to which of defendant's arguments he would respond, and also argued that the court should modify the Reversionary Trust pursuant to the "doctrine of deviation."[3] In plaintiff's November 17, 2017 response to the court's November 9, 2017 Order, plaintiff also asserts that the United States Attorney agreed to pay the CareMeridian bills from the Reversionary Trust from August 11, 2014 forward, and "this was included in the filing in the District Court in the Petition for Settlement." Plaintiff further argues that "[i]t is doubtful if the District Court would have approved the settlement if this provision was never to take place and the plaintiff placed in physical jeopardy."

The court finds that there is no genuine issue of material fact in the above-captioned case, and defendant is entitled to a judgment as a matter of law. Plaintiff has not alleged facts that support a conclusion that defendant breached the parties' express, written Settlement Agreement. The court is able to determine the date the Reversionary Trust was formed and determine which payments are allowable from the plain language of the Settlement Agreement, as well as the Reversionary Trust, which was signed by both parties and incorporated by reference into the Settlement Agreement. According to the terms of the Reversionary Trust, the "administrator shall not authorize (and the trustee shall not pay) [for] . . . goods and services that were provided prior to the date the Trust

---

extant medical liens or costs out of the Upfront Cash, nor did he object or claim that the terms and conditions set forth in writing did not reflect the parties' intent and understanding of the settlement and trust." See Gonzalez v. United States, No. 13-cv-861-LAB (WVG) (S.D. Cal. Apr. 10, 2013). In that case, the District Court granted the parties' joint motion to dismiss, with prejudice, in which the parties stated "[a]ll the terms and conditions of the settlement between the Plaintiff and the United States have been satisfied." Id.

[3] Plaintiff states that,

> the Restatement (Third) of Trusts § 66 (2003) describes the doctrine of deviation as follows: (1) The court may modify an administrative or distributive provision of a trust, or direct or permit the trustee to deviate from an administrative or distributive provision, if because of circumstances not anticipated by the settlor the modification or deviation will further the purposes of the trust.

(emphasis omitted). This court does not have the jurisdiction to entertain a purely equitable remedy, and plaintiff does not cite to any cases supporting his assertion that this court may deviate from the terms of the Settlement Agreement given the facts of this case.

15

is deemed established; [or] goods and services for which an obligation to provide such goods and services was incurred prior to the date the Trust is deemed established." The Reversionary Trust agreement further states that the Reversionary Trust will not be deemed established until,

> (1) each party to the Trust has signed the Trust instrument; (2) the Grantor has deposited with the Trustee the initial sum stated or determined by the terms of the Stipulation; (3) the Trustee has deposited said sum into a separate account opened by the Trustee in the name of the Trust; and (4) the Beneficiary is alive at the time said sum is deposited into said separate account.

According to both parties, the Reversionary Trust was funded on February 25, 2015. Therefore, according to the terms of the Reversionary Trust, the earliest date that the Reversionary Trust could be deemed to have been properly established and authorized to make payments is February 25, 2015. The language is unambiguous, and the court will not look beyond the four corners of the Settlement Agreement. See SUFI Network Servs., Inc. v. United States, 785 F.3d at 593 (citing Coast Fed. Bank, FSB v. United States, 323 F.3d at 1038) (stating "[t]erms must be given their plain meaning if the language of the contract is clear and unambiguous"). Based on the plain meaning of the language in the Reversionary Trust, the court finds that the Reversionary Trust was not permitted to pay the costs that Mrs. Gonzalez incurred at CareMeridian from August 8, 2014 through February 15, 2015. There is no allegation in the plaintiff's pleadings that the Settlement Agreement was not entered into by both parties freely and without coercion. Therefore, the court finds that the defendant did not breach the express, signed Settlement Agreement. Although it is burdensome for the plaintiff and his family that the costs were not covered by the Settlement Agreement, the terms of the Settlement Agreement are clear.

Additionally, other than the declaration signed by plaintiff's counsel of record, Bruce G. Fagel, which was submitted to the District Court in Gonzalez v. United States, No. 13-cv-861-LAB (WVG) (S.D. Cal. Sept. 24, 2014), after the parties had reached a tentative agreement following mediation, there is no contemporaneous support for plaintiff's allegation that defendant entered into an authorized or enforceable oral contract with plaintiff to pay for the CareMeridian bills incurred prior to the date the Reversionary Trust was funded. As noted above, an express written contract and an express oral contract require mutual "intent to be bound, definite offer, unconditional acceptance, and consideration." Edwards v. United States, 22 Cl. Ct. at 420 (citing Essen Mall Properties v. United States, 21 Cl. Ct. at 440; Pac. Gas & Elec. Co. v. United States, 3 Cl. Ct. at 339; and City of Klawock v. United States, 2 Cl. Ct. at 584). Moreover, in his complaint plaintiff did not allege that the United States ever made an offer to pay for medical expenses incurred before the Reversionary Trust was deemed established, or that the parties intended to include such language in the Settlement Agreement, although plaintiff asserts in his opposition to defendant's motion to dismiss that "it was clearly and expressly understood by all involved that the Trust would be covering those costs."

Even if plaintiff were to allege the elements of a valid oral contract, an oral agreement holding the defendant responsible for the medical expenses incurred at CareMeridian before the Reversionary Trust was established would conflict with the express, written Settlement Agreement, which was subsequently entered into by both parties, and, therefore, would not be valid. See Hazeltine Corp. v. United States, 10 Cl. Ct. 417, 442 (1986) (finding "the prior oral agreement is invalid and unenforceable if it conflicts with or varies the terms of the written contract"); Prestex, Inc. v. United States, 3 Cl. Ct. 373, 378-79 (1983) ("It is therefore clear that a prior oral agreement is invalid and unenforceable, if it conflicts with or varies the terms of the subsequent written contract, since all understandings and agreements are considered to have been merged into the subsequent written contract."). Furthermore, plaintiff's contention that the Reversionary Trust is "silent on the issues of the payment of this medical bill" is not correct. The Reversionary Trust specifically states

> the Administrator shall not authorize (and the trustee shall not pay) any of the following . . . goods and services that were provided prior to the date the Trust is deemed established; [or] goods and services for which an obligation to provide such goods and services was incurred prior to the date the Trust is deemed established.

Article IX of the Reversionary Trust explicitly sets out which expenses are allowable and states that allowable costs are only those "incurred after the date the Trust is deemed established . . . ." Defendant complied with the terms of the Settlement Agreement, and, therefore, could not have breached a duly authorized oral agreement by both parties.

As discussed above, the existence of an express, written agreement on a subject also precludes the existence of an implied-in-fact contract dealing with the same subject matter. See Schism v. United States, 316 F.3d at 1278 (citing Atlas Corp. v. United States, 895 F.2d at 755) (stating "the existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract"); David Nassif Assocs. Liquidating Tr. v. United States, 122 Fed. Cl. 366, 375 (2015). The Settlement Agreement provides that "[p]laintiffs stipulate and agree that they are legally responsible for any and all past, present, and future liens and past, present, and future claims for payment or reimbursement." Since the Settlement Agreement and Reversionary Trust, incorporated into the Settlement Agreement by reference, cover how outstanding medical liens incurred before the Trust was established shall be paid, the Settlement Agreement and Reversionary Trust deal with the same subject matter as any possible alleged implied-in-fact contract. Therefore, an implied-in-fact contract contrary to the express, written Settlement Agreement cannot come into existence. See David Nassif Assocs. Liquidating Tr. v. United States, 122 Fed. Cl. at 373; L.P. Consulting Grp., Inc. v. United States, 66 Fed. Cl. 238, 242 (2005).

In his memorandum filed with this court on November 17, 2017, plaintiff tries to rely on three documents attached to his memorandum to create issues of material fact. The first document is a declaration signed by Patrick J. Wehage, an attorney for

17

CareMeridian, which was filed in support of the petition for payment of Mrs. Gonzalez's outstanding medical bills by the Reversionary Trust in the Superior Court of the State of California for the County of San Diego. See Conservatorship of Luz Maria Gonzalez, No. 37-2012-00151931-PR-CP-CTL (Super. Ct. Cal. June 10, 2016). In his declaration, Mr. Wehage states that CareMeridian had accepted and began providing care to Mrs. Gonzalez on or approximately on August 8, 2014. Mr. Wehage also states it was "reported that there was a delay between the settlement of the underlying civil matter and the construct of the special needs trust set up to pay for her care," and that "CareMeridian was again advised by the patient's attorneys that the bills would be satisfied by the trust created for this purpose." (emphasis added). Mr. Wehage states that once the Reversionary Trust was established, the Trust Administrator, "citing the express terms of the special needs trust," refused to issue payment because the bills for the services provided predated the Reversionary Trust, or because they were submitted more than ninety days after the date of service. Additionally, Mr. Wehage notes that the trust is titled as a Reversionary Trust and alleges that "the Department of Justice's financial interests were served by the delay in obtaining the settlement approval and then actually funding the trust." Nothing in the declaration, however, bears on the language in the written and signed Settlement Agreement.

The second document that plaintiff tries to rely on is the third amended petition for approval of the settlement with the United States submitted by plaintiff to the United States District Court for the Southern District of California, which ultimately approved the settlement. See Gonzalez v. United States, No. 13-cv-861-LAB (WVG) (S.D. Cal. Apr. 10, 2013). After describing the injuries suffered by plaintiff, expert medical issues, and status of the settlement negotiations, the petition indicates that the requirements of the case "made it imperative that the plaintiff negotiate a sum for Luz Gonzalez that would provide for her for the better part of her life expectancy . . . ." The petition states:

> As a result of the settlement, Luz Gonzalez was able to be transferred from a Medi-Cal funded facility to a specialty, neuro-care facility known as Care Meridian located in San Diego for more comprehensive care. The net funds allocated to Luz should guarantee full-time care at Care Meridian for at least the next 7 years. The defendant estimated her life expectancy at no more than 8 years. Should Luz Gonzalez live longer than she has funds for Care Meridian, she can requalify for Medi-Cal and return to a facility much like the one she was transferred from.

This document, however, does not provide that defendant would begin making payments to CareMeridian for costs incurred prior to the date the Reversionary Trust was funded. Nor does anything in a section of the document labeled "DETAILS OF THE SETTLEMENT" indicate that defendant would begin making payments to CareMeridian as of the date of Mrs. Gonzalez's transfer to CareMeridian. (capitalization in original). Indeed, the petition only states that Medivest Benefit Advisors shall manage and authorize expenditures, and that Wells Fargo Bank "shall pay all approved expenditures to Care-Meridian." Thus, this petition does not create a genuine issue of material fact.

Finally, plaintiff tries to rely on a declaration signed by Bruce G. Fagel, plaintiff's counsel of record in the above-captioned case and also counsel in plaintiff's FTCA claim in the United States District Court for the Southern District of California, who negotiated the Settlement Agreement which was approved by the District Court. Plaintiff asserts that counselor Fagel's declaration was before the District Court when the settlement was approved, and that the "United States Attorney was present when this settlement was approved and had possession and knowledge of this document." The pertinent portion of the declaration provides:

> Following the agreement reached at the mediation of this case on Aug. 11, 2014, I was able to negotiate both an agreement from the U.S. Attorney that government would pay for Mrs. Gonzalez' [sic] care at Care Meridian from Aug. 11, 2014, forward with such sums to be paid after government funded this settlement. I was also able to negotiate a long-term reduced rate for such care at $1100 per pay [sic], rather than the stated rate of $1350 per day as reflected on plaintiff's life care plan. As a result, Mrs. Gonzalez has been transferred to the Care Meridian facility in La Mesa, California.

While this document indicates that plaintiff's counsel may have believed defendant would pay the expenses of Mrs. Gonzalez's care beginning on August 11, 2014, it cannot change the explicit terms of the written and signed Settlement Agreement and documents incorporated into that agreement. Accordingly, the documents attached to plaintiff's November 17, 2017 memorandum fail to create an issue of material fact or alter the terms of the written and signed Settlement Agreement entered into by the parties.

## CONCLUSION

Plaintiff's complaint is **DISMISSED**. The clerk shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

                                                  s/Marian Blank Horn
                                                  **MARIAN BLANK HORN**
                                                        **Judge**